DAVID E. PIPAL (SBN 59867)
PAXTON ♦ O'BRIEN LAW GROUP LLP
Attorneys at Law
350 Fifth Street
Hollister, CA 95023
Telephone (831) 637-5521
Fax (831) 637-7374
Email: dep@paxton-obrien.com

Attorneys for Plaintiffs Gabriel James DeLeon and Shawna L. DeLeon

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| GABRIEL JAMES DeLEON and SHAWNA L. DeLEON<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., Successor by Merger to Wells Fargo Bank Southwest, N.A. (formerly known as Wachovia Mortgage, FSB and World Savings Bank, FSB); NDEX WEST, L.L.C.; and DOES 1-50, inclusive<br><br>Defendants. | Case No. C-10-01390 JF<br><br>(Assigned to the Honorable Jeremy Fogel)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WELLS FARGO BANK'S MOTION TO DISMISS**<br><br>Date: May 28, 2010<br>Time: 9:00 a.m.<br>Courtroom: 3 |

1

PLAINTIFFS GABRIEL JAMES DeLEON AND SHAWNA L. DeLEON MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT WELLS FARGO BANK'S MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page**

I. PROCEDURAL STATUS ................................................................................................. 2

II. SUMMARY OF FACTS .................................................................................................. 2

III. PLAINTIFFS' COMPLAINT ........................................................................................... 3

IV. REQUIREMENT OF "TENDER" .................................................................................... 4

V. HOMEOWNERS' LOAN ACT (HOLA) .......................................................................... 5

VI. THE FOURTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CIVIL CODE § 2923.5 STATES A CAUSE OF ACTION UNDER CALIFORNIA LAW ................ 8

VII. BUSINESS AND PROFESSIONS CODE § 17200 ........................................................ 9

VIII. PRESUMPTION UNDER CIVIL CODE § 2924 IS REBUTTABLE ............................ 11

IX. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Cuomo, Attorney General of New York v. Clearing House Association, LLC, et al.,*
   510 F. 3d 105, 557 U.S. ...........................................................................................................7

**STATE CASES**

*Cruz v. County of Los Angeles,*
   Supra 173 Cal.App.3d 1131, 1134..........................................................................................11

*Dickson Carlson and Campillo v. Pole,*
   (2000) 83 Cal.App.4th 436, 446; 99 Cal.Rptr.2d 678................................................................4

*Gibson v. World Savings and Loan Association,*
   103 Cal.Rptr.2d 1291, 1306 (2002) ..........................................................................................7

*Hazel L. Altman, Respondent v. Roy A. McCullum et al., Appellants,*
   107 Cal.App.2d Supp. 847; 236P 2d 914 (1951).....................................................................5

*J.S. McCue and wife, Respondents v. William B. Bradbury et al., Appellants,*
   149 Cal. 108, 84 ........................................................................................................................4

*Pro Value Properties, Inc. v. Quality Loan Service Corp.,*
   170 C.A.4th 579, 583 (2009) ..................................................................................................11

*Teodoro Lopez et al., Plaintiffs and Appellants v. Mary Bell et al., Defendants and Respondents*
   207 Cal.App.2d 394 (1962); 24 Cal.Rptr. 626.........................................................................5

*U.F.W. of Am. v. Dutra Farms*
   83 Cal.App.4th 1146 ...............................................................................................................10

*William Little et al. v. CFS Service Corporation,*
   188 Cal.App.3d 1354, 1359 (1987); 233 Cal.Rptr. 923..........................................................11

**FEDERAL STATUTES**

12 U.S.C. § 1461, *et seq.*.................................................................................................................6

**STATE STATUTES**

Business and Professions Code § 17200.....................................................................................9, 10

Business and Professions Code § 17200, *et seq.* ....................................................................3, 8, 9

Cal. Civ. Code § 1511 ................................................................................................................... 4

Cal. Civ. Code § 1512 ................................................................................................................... 5

Cal. Civ. Code § 2923.5 ................................................................................................. 3, 6, 9, 10, 11

Cal. Civ. Code § 2923.5(a)(1)(2) .................................................................................................. 9

Cal. Civ. Code § 2924 ......................................................................................................... 5, 9, 11

Cal. Civ. Code § 2924(c) ............................................................................................................ 11

Cal. Civ. Code § 2924(f) .............................................................................................................. 4

Cal. Civ. Code § 2924, *et seq*. ....................................................................................... 3, 6, 9, 10 11

Cal. Fin. Code § 4973 .................................................................................................................. 3

Cal. Fin. Code § 4979.6 ............................................................................................................... 3

**REGULATIONS**

12 C.F.R. § 560 ............................................................................................................................ 6

12 C.F.R. § 560.2 ................................................................................................................. 6, 7, 8

12 C.F.R. § 560.2(b) .................................................................................................................... 6

12 C.F.R. § 560.2(b)(10) ............................................................................................................. 7

12 C.F.R. § 560.2(c) .................................................................................................................... 7

## I. PROCEDURAL STATUS

On March 31, 2010, defendant WELLS FARGO BANK removed this case from the San Benito County Superior Court to the U.S. District Court, Northern District of California. On April 8, 2010 defendant WELLS FARGO BANK filed a Motion to Dismiss and a Motion to Strike. On April 21, 2010, plaintiffs, GABRIEL JAMES DELEON AND SHAWNA L. DELEON filed a Motion to Remand to the San Benito County Superior Court. The hearing on all of the aforementioned motions is scheduled for May 28, 2010.

## II. SUMMARY OF FACTS

In June, 2004, plaintiffs purchased a home in San Benito County, California. The purchase price was $804,000. Plaintiffs made a down payment of 30% of the purchase price and signed a promissory note in the amount of $562,800, which note was secured by a deed of trust on the subject property. The purchase price was financed by World Savings Bank (now Wells Fargo Bank) (WELLS).

In 2007, WELLS suggested to plaintiffs, orally and in written communications, that plaintiffs refinance the above-referred loan. WELLS told plaintiffs that their home was worth $1.3 million and that plaintiffs could refinance into a more attractive financing arrangement. In September, 2007, plaintiffs did in fact refinance their loan with WELLS for $787,500. WELLS recommended a four year adjustable rate mortgage that called for minimum payments of principal and interest in the amount of $2,600 per month, which was the negative amortization option. Payments under the original loan were $2,100 per month.

In August, 2008, plaintiffs experienced difficulty in making their payments on the new note due to the downturn in the economy. Further, the balance on the new note was greater than the market value of the subject property at that time.

In September, 2009, WELLS commenced foreclosure proceedings under California law and published a Notice of Default. In response, plaintiffs contacted WELLS for the purpose of modifying

their loan to a lower principal balance that was more reflective of market values. In September, 2009, the parties started the loan modification process. WELLS expressed to plaintiffs its confidence that the modification would be approved once all documentation had been received. Plaintiffs had supplied WELLS with all documents required to complete the modification.

On January 16, 2010, plaintiffs learned from a local realtor that their house had been sold and that plaintiffs' property was now owned by the bank. Plaintiffs new nothing of a pending sale of their property and, in fact, were encouraged by WELLS that the loan modification would be approved. Plaintiffs immediately contacted the agent for WELLS, who was handling the loan modification, and informed him of the foreclosure sale. The WELLS' agent knew nothing about a foreclosure sale and told plaintiffs that everything would be okay because "we are still in the loan modification process." Plaintiffs were completely unaware that their property had been sold a Trustee's Sale. No Notice of Trustee's Sale had been posted on plaintiffs' property.

Shortly after learning of the Trustee's Sale, plaintiffs received a notice to vacate the property in 30 days from Wells. At no time prior to the foreclosure sale had plaintiffs been contacted by WELLS to assess the plaintiffs' financial situation or to explore options for plaintiffs to avoid foreclosure. Plaintiffs were never advised by WELLS that they had a right to request a meeting within 14 days, nor were they provided a toll-free telephone number made available by the United States Department of Housing and Urban Development to find a HUD certified housing counseling agency.

### III.  PLAINTIFFS' COMPLAINT

Plaintiffs seek to set-aside the Trustee's Sale conducted by WELLS pursuant to the provisions of California law and Civil Code §§ 2923.5 and 2924, *et seq.* and seek a cancellation of the Trustee's Deed. Plaintiffs further seek to set-aside the Trustee's Sale based upon WELLS' deceptive business practices under Business and Professions Code § 17200, *et seq.* Plaintiffs seek rescission/reformation of the subject loan based upon the predatory lending practices of WELLS under California Financial Code §§ 4973 and 4979.6. Finally, plaintiffs seek general, special and punitive damages based upon

the foregoing claims.

## IV. REQUIREMENT OF "TENDER"

WELLS claims that all Causes of Action are subject to dismissal because the plaintiffs have not tendered the amount of the outstanding indebtedness to WELLS. Under the facts of this case, the requirement of "tender" does not apply.

The requirement of "tender" is based on the proposition that a party seeking the aid of equity must do equity by honoring all rightful obligations. However, the "do equity" requirement is not a complete defense to an action. A trial court has considerable discretion to impose conditions and accommodate the equities in lieu of a strict and literal tender of performance before commencement of litigation. *Dickson Carlson and Campillo v. Pole* (2000) 83 Cal.App.4th 436, 446; 99 Cal.Rptr.2d 678. Here, plaintiffs were lulled into the loan modification process and were lead to believe that the modification would be approved. The parties were engaged in negotiations for the modification at the time of the foreclosure sale. The terms for the modification were to include changing the principal amount due and the applicable interest rate. While these negotiations were pending, WELLS deceptively conducted a trustee's sale and acquired title to the property. Plaintiff was totally unaware of the trustee's sale in that a Notice of Trustee's Sale had not been posted on plaintiff's property as required under California law (Civil Code 2924(f)). Had plaintiffs known of the trustee's sale, it would have had the opportunity to either reinstate or file an action in court seeking an injunction against the sale.

It has long been established that a court of equity will refuse to enforce a forfeiture at the instance of one who has obtained the legal right to it by fraud, deceit or any other form of oppressive practice; and, upon the other hand will relieve the innocent where such a forfeiture so secured is sought to be enforced. *J.S. McCue and wife, Respondents v. William B. Bradbury et al., Appellants* 149 Cal. 108, 84. Further, California Civil Code § 1511 provides that "the want of performance of an obligation...or any delay therein is excused by the following causes to the extent to which they

4
PLAINTIFFS GABRIEL JAMES DeLEON AND SHAWNA L. DeLEON MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WELLS FARGO BANK'S MOTION TO DISMISS

operate: 1) when such performance or offer is prevented or delayed by the act of the creditor…or, 3) when the debtor is induced not to make it, by any act of the creditor intended or naturally tending to have that effect, done at or before the time at which such performance or offer may be made, and not rescinded before that time." Further, if the performance of an obligation be prevented by the creditor, the debtor is entitled to all of the benefits which he would have obtained if it had been performed by both parties (Civil Code Section 1512).

The doctrine of estoppel also acts as a bar to the "tender" defense. "A beneficiary under a Deed of Trust is estopped to cause the sale of property where she waives default in term of payments…, delays more than a reasonable time before recording a Notice of Default and Intent to Sell, and pursues a course of conduct calculated to withhold from the Trustors the fact of recordation and the existence of defaults until expiration of the time in which the Trustors can reinstate under Civil Code § 2924….Equitable estoppel is based on the fundamental principal that ones conduct has induced another to take such a position that he will be injured if the first party is permitted to repudiate his acts." *Hazel L. Altman, Respondent v. Roy A. McCullum et al., Appellants* 107 Cal.App.2d Supp. 847; 236P 2d 914 (1951).

The defense of "tender" may also be waived by a beneficiary under a Deed of Trust. *Teodoro Lopez et al., Plaintiffs and Appellants v. Mary Bell et al., Defendants and Respondents* 207 Cal.App.2d 394 (1962); 24 Cal.Rptr. 626. Here, the loan balance was uncertain because the parties were still negotiating the loan modification terms.

Plaintiffs are unable to cite to any authority that would require tender of payment where, at the time of the default or the trustee's sale, the lender and the borrower were actively engaged in a loan modification.

Based upon the foregoing, plaintiffs are not required to allege tender or the ability to tender the amount of the outstanding indebtedness.

## V. HOMEOWNERS' LOAN ACT (HOLA)

5

PLAINTIFFS GABRIEL JAMES DeLEON AND SHAWNA L. DeLEON MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WELLS FARGO BANK'S MOTION TO DISMISS

WELLS claims that all of the causes of action alleged in the complaint are preempted by the Homeowners' Loan Act (HOLA) 12 U.S.C. § 1461, *et seq.* and its implementing regulations (12 C.F.R. § 560). WELLS argues that the complaint is "entirely based upon allegations that Wells Fargo placed plaintiffs in a loan they could not afford and that alleged wrongs were committed during the processing and servicing of this loan."

WELLS foreclosed on plaintiffs' property by following the statutory procedures under California law. Accordingly, WELLS cannot deny that it was required to comply with the California statutory process for non-judicial foreclosure as found in California Civil Code §§ 2923.5 and 2924, *et seq.*. WELLS has availed itself of the foreclosure procedures under California law and cannot now claim that its failure to comply with such law is preempted by federal law.

With the exception with the Sixth Cause of Action alleging the violation of California's Predatory Lending law, plaintiffs do not complain about the lending activities or practices of WELLS. Plaintiffs complain that WELLS failed to comply with the California statutory process for foreclosure on the Deed of Trust and engaged in an unfair and deceptive business practice by foreclosing while at the same lulling the plaintiff into a loan modification process.

HOLA and the regulations to implement HOLA (Code of Federal Regulations title 12 part 560) discuss the applicability of HOLA and its occupation of the field. In 12 C.F.R. § 560.2 the Office of Thrift Supervision (OTS) is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations. The regulation provides that federal savings associations may extend credit as authorized under federal law, including this part, without regard to <u>state laws purporting to regulate or otherwise affect their credit activities</u>. The regulation provides exceptions to this rule and excludes the effect of state laws.

WELLS focuses on the language in 12 C.F.R. § 560.2(b) (attached hereto as Exhibit "A"). This subsection sets out the examples of the types of state laws that are preempted by HOLA. Clearly, the state laws that are preempted deal only with lending activities or extension of credit. WELLS,

however, seizes upon section 560.2(b)(10) which preempts state laws dealing with processing, ... servicing, ... mortgages, and argues that California's foreclosure laws and unfair business practices law somehow involve the processing or servicing of a mortgage. Wells' argument fails to take into account the subsection that follows, 560.2(c) (See Exhibit A), which provides a list of the state laws that are not preempted to the extent that they only incidentally affect the lending operations of federal savings associations. State laws that are not preempted, include <u>real property law</u>, <u>contract</u> and commercial law and <u>tort law</u>. Certainly, the California foreclosure statutes would be considered "real property law." Further, the foreclosure statutes do not affect the lending operations of a federal savings association but only provide a process for a bank to follow when it chooses to foreclose on a real property security instrument such as a deed of trust.

The federal government has not occupied the real property foreclosure field. In fact, there are no federal laws that govern the real property foreclosure process for a federal savings association. Therefore, HOLA does not occupy the field or preempt the application of state laws dealing with foreclosure on real property loans secured deeds of trust. Further, it is incomprehensible that WELLS would take advantage of and benefit from California's foreclosure statutes and then claim that its failure to comply with such law is preempted by federal law

As to preemption of California's Predatory Lending Law, the U.S. Supreme Court held in the case of *Cuomo, Attorney General of New York v. Clearing House Association, LLC, et al.* 510 F. 3d 105, 557 U.S. __ (decided June 29, 2009) that enforcement of New York State's Fair Lending laws were not preempted by the National Banking Act. Wells is a national bank and is regulated under the National Banking Act. It was Wells Fargo Bank that foreclosed on plaintiffs' property and, in the process, engaged in unfair and deceptive business practices.

Finally, in *Gibson v. World Savings and Loan Association* 103 Cal.Rptr.2d 1291, 1306 (2002) the court limited the effect of OTS's lending powers regulation found in 12 C.F.R. § 560.2. The Gibson case involved a class-action alleging that a federally chartered savings association committed

7

PLAINTIFFS GABRIEL JAMES DeLEON AND SHAWNA L. DeLEON MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WELLS FARGO BANK'S MOTION TO DISMISS

unfair business practices under California's Unfair Business Practices law, sections 17200, *et seq.* of the Business and Professions Code. <u>The court found that the California's Unfair Competition law applied to the bank despite OTS'S regulation.</u> The court stated:

> "The state cannot dictate to the bank how it can or cannot operate, but it can insist that, however the bank chooses to operate, it does so free from fraud and other deceptive business practices." Page 1299

The court found that as to each state law claim the appropriate question is whether the legal duty that is the basis of the claim constitutes a requirement or prohibition of the sort that federal law expressly preempts. The court found plaintiff's claims were based on the duties of a contracting party to comply with its contractual obligations, to act reasonably to mitigate its damages in the event of a breach of another party, to refrain from unfair business practices, and not to misrepresent material facts. The court stated that these duties are not requirements or prohibitions of the sort that section 560.2 preempts, but instead were duties that govern over any contracting party not just those in the lending business (page 1299).

Therefore, although federally chartered savings associations enjoy broader preemption rights, there are limits to those rights. The statute is clear that WELLS may be sued under the state's real property laws, contract laws, or in tort to the extent that such laws only incidentally affect the lending operations of WELLS. None of the acts alleged in plaintiffs complaint affect the lending operations of WELLS other than the Sixth cause of action alleging predatory lending practices. As to the unfair business practice allegation, plaintiffs are not complaining about the lending practices or operations of WELLS. Instead, plaintiffs complain that Wells deceived the plaintiffs and lulled them into a loan modification process while, at the same time, conducted a foreclosure sale behind the plaintiffs' backs. These activities have nothing to do with the lending process or the servicing of a mortgage and, therefore, the preemption statute cited above does not apply.

**VI.    THE FOURTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CIVIL CODE § 2923.5 STATES A CAUSE OF ACTION UNDER CALIFORNIA LAW.**

8

PLAINTIFFS GABRIEL JAMES DeLEON AND SHAWNA L. DeLEON MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WELLS FARGO BANK'S MOTION TO DISMISS

WELLS contends that there is no private right of action under Civil Code § 2923.5 but cites no authority in support of its position.

Civil Code § 2923.5 imposes a mandatory duty on a lender to provide certain information to a borrower prior to filing a Notice of Default. The lender must make an initial contact with the borrower either by in person or by telephone to assess the borrowers financial condition and explore conditions for the borrower to avoid foreclosure. During this initial contact, the lender shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the lender shall schedule a meeting to occur within 14 days. The lender is required to provide the borrower with the telephone number made available by the United States Department of Housing and Urban Development to find a HUD certified counseling agency (Civil Code § 2923.5(a)(1)(2)).

A Notice of Default filed under § 2924 must include a declaration under Civil Code 2923.5 that the lender has contacted the borrower or has tried, with due diligence, to contact the borrower, or that no contact was required.

Based upon the clear language of the statute, compliance with Civil Code 2923.5 is a requirement in statutory process for conducting non-judicial foreclosures under California Civil Code 2924, *et seq.* and may be enforced as part of that statutory process.

### VII. BUSINESS AND PROFESSIONS CODE § 17200.

WELLS asserts that plaintiffs fail to state a cause of action for violation of Business and Professions Code 17200, *et seq.*. The Complaint alleges that Wells and plaintiffs were finalizing the loan modification when plaintiffs learned that their property had been sold at a trustee's sale. Prior thereto, WELLS had expressed confidence that the loan modification would be approved once all documents had been submitted. WELLS encouraged plaintiffs and told them that "everything will be okay." WELLS failed to post a Notice of Trustees Sale on plaintiffs' property.

Based upon the above facts, plaintiffs allege that WELLS engaged in an unfair and deceptive business act or practice under Business and Professions Code 17200 in that WELLS withheld

9
PLAINTIFFS GABRIEL JAMES DeLEON AND SHAWNA L. DeLEON MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WELLS FARGO BANK'S MOTION TO DISMISS

information that the property was going to be sold or had been sold while at the same time expressing confidence that the loan modification would be approved. The Complaint also alleges that WELLS engaged in an unlawful business act or practice by failing to comply with the statutory foreclosure process under Civil Code §§ 2923.5 and 2924, *et seq.*

The unfair competition statute, Business and Professions Code § 17200, provides that "unfair competition shall mean and include an unlawful, unfair or fraudulent business <u>act</u> or practice and unfair, deceptive, untrue, misleading advertising...." The unfair competition statute is not confined to only anti-competitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct. Thus, California Courts have consistently interpreted the language of California Business and Professions Code § 17200 broadly. Accordingly, the statute not only prohibits an unlawful business act or practice but also protection from fraud and deceit in one's business acts or practices.

WELLS claims that the complaint is deficient in that it fails to allege ongoing unlawful, unfair and fraudulent business acts by WELLS.

In the case *U.F.W. of Am. v. Dutra Farms* 83 Cal.App.4th 1146 the Appellants argued that their violations were "isolated" incidents and therefore could not support liability under Business and Professions Code § 17200 because that statute requires a "pattern" of unlawful conduct. The Court in Dutra found this argument to be without merit. The Court held:

> "In response to the California Supreme Court's 1988 ruling that a "business practice" under Business and Professions Code § 17200 must encompass more than a single transaction (see *State of California Ex Rel. Van DeKamp v. Texaco, Inc.* (1988) 46 Cal.3d 1147, 1169-1170, 252 Cal.Rptr. 221), the legislature amended the statute in 1992 to provide that "unfair competition shall mean and include any unlawful, unfair or fraudulent business <u>act</u> or practice".
>
> The California Supreme Court has interpreted the 1992 amendment as overruling that part of Van DeKamp that interpreted the statute to require more than a single act…. Accordingly, under the current version of the statute, even a single act may create liability…. (Pg.1163)

10

PLAINTIFFS GABRIEL JAMES DeLEON AND SHAWNA L. DeLEON MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WELLS FARGO BANK'S MOTION TO DISMISS

Therefore, under the current version of Business and Professions Code § 17200 an unfair, fraudulent or deceitful business act or practice can be the result of a single act.

### VIII. PRESUMPTION UNDER CIVIL CODE § 2924 IS REBUTTABLE

Although the Motion is unclear, WELLS apparently claims that the presence of language in the trustee's deed that the sale complied with all statutory requirements creates prima facie evidence that WELLS complied with the statutory requirements.

Civil Code § 2924(c) provides that "a recital in the Trustee's Deed of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal deliver of a copy of the Notice of Default or the posting of copies of the Notice of Sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements." This recital does nothing more than establish a <u>rebuttable presumption</u> that the defendants have complied with the procedural requirements of Civil Code § 2924, *et seq.*.

The complaint clearly alleges that the statutory notice requirements were not met under Civil Code § 2924 in that no Notice of Trustee's Sale was posted on the plaintiffs' property. The complaint further alleges that the defendants did not comply with Civil Code § 2923.5 in that the defendants did not contact plaintiff orally or in writing to assess their financial situation or to explore options to avoid foreclosure. Plaintiffs were never contacted and told of their rights under Civil Code § 2923.5.

This Motion to Dismiss is not the appropriate vehicle for determining the truth of disputed facts. *Cruz v. County of Los Angeles*, Supra 173 Cal.App.3d 1131, 1134.

WELLS and NDEX WEST, LLC failed to execute the ministerial acts required by the statute which results in a void trustee's sale. *Pro Value Properties, Inc. v. Quality Loan Service Corp.*, 170 C.A.4th 579, 583 (2009). Where there has been a notice defect in the statutory foreclosure process the sale is void. The trustee's deed cannot be given any effect whatever. *William Little et al. v. CFS Service Corporation*, 188 Cal.App.3d 1354, 1359 (1987); 233 Cal.Rptr. 923. WELLS claim of

qualified privilege is irrelevant in this case.

## IX. CONCLUSION

For the foregoing reasons, plaintiffs request that WELLS Motion to Dismiss be denied. Should any portion of WELLS' motion be granted, plaintiffs request the opportunity to amend the complaint to conform to the court's ruling.

Dated: May 6, 2010.

Respectfully submitted,

PAXTON ♦ O'BRIEN LAW GROUP LLP

By _____
DAVID E. PIPAL, Attorneys for Plaintiffs
Gabriel James DeLeon and Shawna L. DeLeon

# EXHIBIT "A"

# Title 12: Banks and Banking
PART 560—LENDING AND INVESTMENT

Browse Previous | Browse Next

## § 560.2  Applicability of law.

(a) *Occupation of field.* Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or §560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

(b) *Illustrative examples.* Except as provided in §560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:

(1) Licensing, registration, filings, or reports by creditors;

(2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;

(3) Loan-to-value ratios;

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

(6) Escrow accounts, impound accounts, and similar accounts;

(7) Security property, including leaseholds;

(8) Access to and use of credit reports;

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

(11) Disbursements and repayments;

(12) Usury and interest rate ceilings to the extent provided in 12 U.S.C. 1735f–7a and part 590 of this chapter and 12 U.S.C. 1463(g) and §560.110 of this part; and

(13) Due-on-sale clauses to the extent provided in 12 U.S.C. 1701j–3 and part 591 of this chapter.

(c) *State laws that are not preempted.* State laws of the following types are not preempted to the extent

that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

(1) Contract and commercial law;

(2) Real property law;

(3) Homestead laws specified in 12 U.S.C. 1462a(f);

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

(i) Furthers a vital state interest; and

(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.