1

2 **E-Filed 6/9/2010**

3

4

5

6

7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10 **SAN JOSE DIVISION**

11

12 GABRIEL JAMES DeLEON and SHAWNA L. DeLEON,

13                                      Plaintiffs,

14        v.

15

16 WELLS FARGO BANK, N.A., successor by Merger to Wells Fargo bank Southwest, N.A.

17 (formerly known as Wachovia Mortgage, FSB and World Savings Bank, FSB); NDEX WEST, LLC

18 and DOES 1-50, inclusive,

19                                  Defendants.

Case Number CV 10-01390 JF (HRL)

**ORDER[1] DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART**

[re doc. no. 5, 6, & 10 ]

20

21

22     Plaintiffs Gabriel and Shawna DeLeon (the "DeLeons") move to remand the instant

23 action to the San Benito Superior Court for lack of diversity jurisdiction pursuant to 28 U.S.C. §

24 1332, *et seq.* Defendant Wells Fargo Bank, N.A. ("Wells Fargo")  moves to dismiss the action

25 pursuant to Fed. R. Civ. P. 12(b)(6) and to strike portions of the complaint pursuant to Fed. R.

26

27

28     [1] This disposition is not designated for publication in the official reports.

1   Civ. P. 12(f).  The Court has considered the moving and responding papers and the oral

2   arguments of counsel presented at the hearing on May 28, 2010. For the reasons discussed below,

3   the motion to remand will be denied, and the motion to dismiss will be granted, with leave to

4   amend in part.

5                                          **I. Background**

6   **A.      Factual History**

7          In 2004, the DeLeons purchased a home in San Benito County (the "Property") for

8   $804,000, secured by a note to World Savings Bank, FSB in the amount of $562,800. Compl. ¶

9   10. In 2007, World Savings offered the DeLeons the option of refinancing their existing loan

10  because the home had appreciated in value. Compl.  ¶ 11. The DeLeons and World Savings

11  entered into a refinance agreement in which the note was refinanced for $787,500 subject to a

12  four-year adjustable rate mortgage. Compl. ¶ 11. Beginning in August 2008, the DeLeons were

13  unable to afford the payments on the new note.  Compl. ¶ 12. They allege that at that point the

14  new loan balance was greater than the market value of the Property. Compl. ¶ 12.

15         In or around September 2009, after World Savings had changed its name to Wachovia

16  Mortgage, FSB and then merged into Wells Fargo Bank, N.A., Mot. to Dismiss 1:16-18, a notice

17  of default was recorded and sent to the DeLeons. Compl. ¶ 13. Thereafter and through December

18  2009, the parties engaged in discussions about a possible loan modification. Compl. ¶ 13. The

19  DeLeons allege that Wells Fargo expressed confidence that a loan modification could be worked

20  out once all necessary documents had been received from the DeLeons. Compl. ¶ 14.

21         On January 16, 2010, the DeLeons were told by a realtor that the Property had been sold

22  at a trustee's sale in which Wells Fargo was the purchaser. Compl. ¶ 15.  The DeLeons allege

23  that even after the sale, a Wells Fargo agent continued to tell them that there would be no

24  foreclosure because parties still were engaged in the loan modification process. Compl. ¶ 15.

25  Following the January sale, Wells Fargo gave the DeLeons notice to vacate the Property within

26  thirty days. Compl. ¶ 18.

27         The DeLeons allege that they never received notice of a trustee's sale and that the notice

28                                              2

1   of such a sale never was posted on the Property. Compl. ¶ 19. They also allege they never were

2   advised by Wells Fargo that they had a right to request a meeting or provided a toll-free number

3   to find a HUD-Certified Housing Counseling Agency. Compl.¶ 19.

4   **B.      Procedural History**

5          On February 10, 2010, the DeLeons filed suit in the San Benito Superior Court, asserting

6   seven claims for relief: (1) wrongful foreclosure under California Civil Code § 2924; (2)

7   cancellation of trustees' deed; (3) violation of California Business and Professions code § 17200,

8   *et seq.*; (4) violation of California Civil Code § 2923.5; (5) predatory lending under California

9   Financial Code §§ 4973 and 4979.6; (6) quiet title; and (7) preliminary and permanent injunction.

10  In April 2010, Defendant removed the action to this Court pursuant to pursuant to 28 U.S.C. §

11  1332, *et seq.*

12                          **II. Motion to Remand**

13         The DeLeons are citizens of California, and Wells Fargo is a nationally-chartered bank,

14  with its main corporate office in South Dakota. Pls. Reply to Mot. 8:10. Wells Fargo also

15  maintains a principal place of business in San Francisco, California and does business throughout

16  the state. *See Mount v. Wells Fargo Bank, N.A.,* No. CV 08-6298 GAF (MANx), 2008 U.S. Dist.

17  LEXIS 98193, at *3 (C.D. Cal. Nov. 24, 2008). *See also Wells Fargo Bank, N.A. v. Siegel*, No.

18  05 C 5635, 2007 U.S. Dist. LEXIS 41886 at *2 (N.D. Ill. June 8, 2007). A threshold legal

19  question is whether Wells Fargo is a citizen of California under 28 U.S.C. § 1348 because its

20  principal place of business is in California.

21  **A.      Legal Standard**

22         Federal courts are courts of limited jurisdiction. That jurisdiction includes civil actions

23  between "citizens of different States" where the amount in controversy exceeds $75,000. 28

24  U.S.C. § 1332(a)(1) (2006). A non-natural person such as a corporation may be a citizen of two

25  different states. 28 U.S.C. 1332(c)( "[A] corporation shall be deemed to be a citizen of any State

26  by which it has been incorporated and of the State where it has its principal place of business....")

27  Here, this Court has jurisdiction only if Wells Fargo's citizenship is diverse from the DeLeons'.

28                                    3

1   *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 88 (1996) (stating that diversity jurisdiction requires

2   "complete diversity of citizenship"). Any moving party asserting diversity jurisdiction bears the

3   burden of showing that diversity exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

4   375, 377 (1994). Similarly, when an action has been removed from state court to federal court

5   under 28 U.S.C. § 1441, there is an equally "strong presumption" against removal jurisdiction,

6   unless the defendant can establish that removal was proper. *Gaus v. Miles*, 980 F.2d 564, 566

7   (1992). Any such doubt as to removability must be made in favor of remand to state court. *Id.*

8        28 U.S.C. § 1348 limits the citizenship of a national banking association to the state in

9   which the association is "located."[2] Prior to the decision of the United States Supreme Court in

10  *Schmidt v. Wachovia Bank, N.A.,* 546 U.S. 303 (2006), lower courts had created several tests to

11  determine the meaning of "located" with respect to the citizenship of a national bank. *See, e.g.,*

12  *Horton v. BankOne*, *N.A.*, 387 F.3d 426, 434 (5th Cir. 2004) (bank's principal place of business

13  determines whether there is citizenship); *World Trade Ctr. Prop., LLC v. Hartford Fire Ins. Co.*,

14  34 F. 3d 154, 161 (2d Cir. 2003) (bank is a citizen of states where it maintains an office or bank

15  branch).

16       In *Schmidt*, the Supreme Court reaffirmed that a national bank is a citizen of the state in

17  which its main office is located. 546 U.S. at  313-14. However, it reversed the determination of

18

19  _____

        [2]

20         The district courts shall have original jurisdiction of any civil action
        commenced by the United States, or by direction of any officer
21      thereof, against any national banking association, any civil action to
        wind up the affairs of any such association, and any action by a
22      banking association established in the district for which the court is
        held, under chapter 2 of Title 12, to enjoin the Comptroller of the
23      Currency, or any receiver acting under his direction, as provided by
        such chapter.
24

25         All national banking associations shall, for the purposes of all other
        actions by or against them, be deemed citizens of the States in which
26      they are respectively located.

27

28                                          4

1   the Fourth Circuit that "located" could be interpreted to mean that a national bank is a citizen of

2   any state in which it maintains a branch office. *Id*. "[W]hile corporations ordinarily rank as

3   citizens of at most 2 States, Wachovia, under the Court of Appeals' novel citizenship rule, would

4   be a citizen of 16 States." *Id*. at 317.   While the holding in *Schmidt* could be narrowly limited to

5   a rejection of a "branch office" interpretation of § 1348, thus remitting dual citizenship based on

6   a bank's principal place of business, lower courts since *Schmidt* have taken the view that the

7   "main office" standard is the *only* way to determine the citizenship of a national bank. *See*

8   *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006).

9   **B.   Wells Fargo is not a citizen of California**

10          Relying on *Schmidt*, Wells Fargo contends that it is neither located in nor a citizen of

11   California. The Court agrees. Plaintiffs argue that footnote 8 of *Schmidt* supports a conclusion

12   that a bank may be "located" at a principal place of business, but it is clear from the entire text of

13   the footnote that the Court expressed no such view:

14                  Context also matters in assigning meaning to the word 'established.'
                    (Citation omitted). Given the character of the proceedings covered by
15                  the first paragraph of § 1348, (citation omitted), one might read
                    'established' as referring to the bank's main office as set forth in its
16                  articles of association. Other readings mentioned in Court of Appeals
                    opinions are the bank's principal place of business and the place listed
17                  in the bank's organization certificate. *See Horton v. Bank One, N. A*.,
                    387 F.3d 426, 434 (5th Cir. 2004); *Firstar Bank, N. A. v. Faul*, 253
18                  F.3d 982, 992 (7th Cir. 2001). Because this issue is not presented by
                    the parties or necessary to today's decision, we express no opinion on
19                  it.

20   *Id.* at 315 n.8.

21          Moreover,  in footnote 9, the Court recognized the imperfect parity between corporations

22   and national banks:

23                  Congress has prescribed that a corporation 'shall be deemed to be a
                    citizen of any State by which it has been incorporated and of the State
24                  where it has its principal place of business.' 28 U.S.C. § 1332(c)(1).
                    The counterpart provision for national banking associations, § 1348,
25                  however, does not refer to 'principal place of business'; it simply
                    deems such associations 'citizens of the States in which they are
26                  respectively located.' The absence of a 'principal place of business'
                    reference in § 1348  may be of scant practical significance for, in
27                  almost every case, as in this one, the location of the national bank's

28                                                    5

1  main office and of its principal place of business coincide.

2  *Id.* at 318 n.9. Subsequently, in *Hertz v. Friend*, 130 S. Ct. 1181, 1185 (2010), the Supreme

3  Court has defined "principal place of business" under 28 U.S.C. § 1332(c)(1) as a corporation's

4  "nerve center" where "the corporation's high level officers direct, control, and coordinate the

5  corporation's activities."*Id.* at 1185. By adopting such a definition, the Court implicitly furthered

6  parity between state chartered banks and corporations and national banks.

7  The DeLeons rely upon *Mount v. Wells Fargo Bank, N.A.,* in which the district court

8  found that Wells Fargo was a citizen of California for diversity purposes. No. CV 08-6298 GAF

9  (MANx), 2008 U.S. Dist. LEXIS 98193, at *4-5 (C.D. Cal. Nov. 24, 2008). However, a later

10  district court decision in *Peralta v. Countrywide Home Loans*, No. C 09-3288 PJH, 2009 U.S.

11  Dist. LEXIS 112387 (N.D. Cal. Nov. 16, 2009), explicitly rejected *Mount* and adopted the

12  holding in *Excelsior Funds, Inc. v. J.P. Morgan Chase Bank, N.A.*, 470 F. Supp. 2d 312

13  (S.D.N.Y. 2006), that for purposes of diversity jurisdiction a national bank is a citizen of the state

14  in which its main office as specified in its articles of association is located. *Id.* at *13-14. *See*

15  *also Wells Fargo Bank, N.A., v. WMR e-Pin, LLC,* No. 08-5472 (JNE/FLN)*,* 2008 U.S. Dist.

16  LEXIS 104558 *4 (D. Minn. Dec. 29, 2008) ("[T]he Court concludes that Wells Fargo Bank

17  does not take the citizenship of the state of its principal place of business. Because Wells Fargo

18  Bank is not a citizen of California, the Court rejects Respondents' assertion that complete

19  diversity of citizenship does not exist.")

20  In the absence of controlling Ninth Circuit authority, this Court will decline Plaintiffs'

21  invitation to apply a principal place of business test to Wells Fargo. Consequently, the Court

22  concludes that Wells Fargo is a citizen of the state in which its main office, as specified in its

23  articles of association, is located. *See Schmidt*, 546 U.S. at 318. Because complete diversity

24  exists, the motion to remand will be denied.

25  ### III. Motion to Dismiss

26  Wells Fargo moves to dismiss all of the DeLeons' claims as preempted by the Home

27  Owners' Loan Act ("HOLA"). The Court agrees that the first, second, fifth, and seventh claims

28  6

are preempted and cannot be saved by amendment. The motion will be granted with leave to amend with respect to the DeLeons' remaining claims.

**A.      Legal Standards**

**1. Rule. 12(b)(6)**

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, "[w]hile a complaint attacked by a Rule 12 (b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiffs' obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Leave to amend must be granted, unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't. of Corrs.*, 66 F.3d 245, 248 (9th Cir.1995).

**2. Preemption Under HOLA**

"[T]he laws of the United States...shall be the supreme law of the land;... any Thing in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const., art. VI, cl. 2. The Constitution through the Supremacy Clause allows for federal law and regulations to preempt state laws, however, "[i]t will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so." *Schwartz v. Texas*, 344 U.S. 199, 202-03 (1952). Such intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Fidelity Federal Sav. & Loan Assn. v. De La Cuesta*, 458 U.S. 141, 152-53 (1982). A federal agency regulation also may result in preemption. *Gibson v. World Savings & Loan Assn.*, 128 Cal. Rptr. 2d 19, 23 (Cal Ct. App. 2002). However, in the regulatory context, courts consider whether (1) the agency intended its regulation to have a preemptive effect, and (2) the agency acted within the scope of its

7

1    congressionally delegated authority by issuing the preemptive regulation. *De La Cuesta*, 458 U.S.

2    at 154. If these conditions are met, "[f]ederal regulations have no less pre-emptive effect than

3    federal statutes." *Id.* at 153. The construction of statutes, legislative intent, interpretation of

4    administrative regulations are all questions of law.  *See Bravo Vending v.  City of Rancho*

5    *Mirage*, 16 Cal. Rptr. 2d 164, 166-67 (Cal. Ct. App. 1993).

6         While preemption analysis begins with the presumption that Congress did not intend to

7    supplant state law, this presumption is  "not triggered when the State regulates in an area where

8    there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108

9    (2000). *See Bank of Am. v. City & County of San Francisco*, 209 F.3d 551, 558 (9th Cir. 2002).

10   "Congress has legislated in the field of banking from the days of *McCulloch v. Maryland*, 17

11   U.S. 316, 325-26 (1819), creating an extensive federal statutory and regulatory scheme." *Bank of*

12   *Am.,* 209 F.3d at 558. Similarly, Congress enacted the Home Owners' Loan Act of 1933, 12

13   U.S.C. § 1461 (2006), *et seq.,* to charter savings associations during a time of economic

14   uncertainty for state-chartered savings associations. *See Silvas v. E*Trade Mortg. Corp.*, 514

15   F.3d 1001, 1005-06 (9th Cir. 2008). HOLA was crafted in part to restore public confidence in a

16   network of centrally regulated federal savings and loan associations. *Id.*  Through HOLA, and its

17   implementing regulation, 12 C.F.R § 560, Congress authorized and delegated power and

18   authority to the Office of Thrift Supervision ("OTS") to regulate and govern "every federal

19   savings and loan association from its cradle to its corporate grave." *De La Cuesta*, 548 U.S. at

20   145. *See* 12 C.F.R. §§ 500.1(a) (the OTS "is responsible for the administration and enforcement

21   of the [HOLA]"), 500.10 (the functions of the OTS are to "charter, supervise, regulate and

22   examine Federal savings associations.").[3]

23   ─────────────

24        [3] Recognizing a clear intent for regulatory preemption under § 560.2(a):

25            OTS is authorized to promulgate regulations that preempt state
             laws affecting the operations of federal savings associations when
26           deemed appropriate to facilitate the safe and sound operation of
             federal savings associations, to enable federal savings associations
27           to conduct their operations in accordance with the best practices of

28                                              8

As relevant to the current motion, HOLA sets forth "without limitation" a list of illustrative examples of the types of state laws that are expressly preempted. § 560.2(b):

> The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> ...
>
> Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> ...
>
> Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

Section 560.2(b)(4), (b)(9)-(10).

However, HOLA preemption of state laws affecting federal savings associations is not absolute. Section 560.2(c) carves out state laws that "only *incidentally* affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." (Emphasis added). The Ninth Circuit has given further guidance with respect to whether a state law is preempted by HOLA:

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b) [of 12C.F.R. § 560.2]. If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Silvas*, 514 F.3d at 1005 (quoting OTS, *Final Rule,* 61 Fed. Reg. 50951, 50966-67 (Sep. 30, 1996)**).**

---

thrift institutions in the United States, or to further other purposes of the HOLA.

1

**B.     Discussion**

2      Wells Fargo notes that at the time the loan was made to the DeLeons, "World Savings

3   Bank, FSB was a federally chartered savings bank organized and operating under HOLA" and

4   observes correctly that the same preemption analysis would apply to any alleged conduct after

5   November 1, 2009, when the lender merged into a national banking association.

6   **1. Wrongful Foreclosure (Claim 1)**

7      The DeLeons allege that prior to the non-judicial foreclosure and sale, Wells Fargo

8   violated California Civil Code § 2924 by failing to give them notice and to publish, post and

9   record said notice. In *Steffan v. Wachovia*, another court in this district concluded that a claim

10  based on comparable facts was preempted by HOLA. No. C 09-2252 SBA, 2009 U.S. Dist.

11  LEXIS 113480, at *7-8  (N.D. Cal. Dec. 7, 2009). Judge Armstrong held that the plaintiff's claim

12  of misconduct surrounding the foreclosure proceedings plainly involved 'processing, origination,

13  sale or purchase of … mortgages' and 'disclosure....'*Id.* at*9. Because § 2924 would regulate

14  Wells Fargo's disclosure of credit related documents and its ability to participate and service its

15  mortgages, this Court reaches the same conclusion.

16  **2. Violation of California Business and Professions Code (Claim 3)**

17      The DeLeons allege violations of California's Unfair Competition Law ("UCL"),

18  Business and Professions Code § 17200 *et seq.* Specifically, they complain that they were given

19  false assurances that their loan modification with Wells Fargo would be approved and that there

20  would be no foreclosure while the loan modification process was pending. Comp. ¶ 33. While

21  this claim invokes a broad state law of general applicability, the Ninth Circuit recognized in

22  *Silvas* that HOLA preemption still may apply. 514 F.3d at 1005. The court expressly declined to

23  analyze the UCL under 560.2(c). *Id. Accord Casey v. Federal Deposit Insurance Co.*, 583 F.3d

24  586, 593-94 (8th Cir. 2009); *State Farm Bank, FSB v. Reardon*, 539 F.3d 336, 345 (6th Cir.

25  2008) ("[N]othing in the text of [] § 560.2 indicates that it only preempts state laws that directly

26  regulate federal savings associations."); *State Farm Bank, FSB v. District of Columbia*, 640 F.

27

28

10

1    Supp. 2d 17, 23 (D.D.C. 2009).

2    The DeLeons rely on *Gibson v. World Savings and Loan Association*, 103 Cal. Rptr. 2d

3    1291, 1306 (2002)*, to support their assertion that there is no preemption, but *Gibson* is factually

4    distinguishable. In that case, the plaintiffs alleged that borrowers with secured loans made or

5    serviced by the defendant, a national savings association, were forced to pay for more expensive

6    property insurance selected by the defendant after the borrowers had failed to maintain their own

7    bank approved insurance on the secured property. 128 Cal. Rptr. 2d at 21. The plaintiffs claimed

8    that this practice violated the terms of the their deeds of trust, and they also made related breach

9    of contract claims. *Id.* In holding there was no HOLA preemption of § 17200, *et seq.,* the court

10   noted that "the duties to comply with contracts and the laws governing them and to refrain from

11   misrepresentation...are principles of general application. They are not designed to regulate

12   lending and do not have a disproportionate or otherwise substantial effect on lending." *Id.* at

13   1303-04.

14   *Silvas* and *Gibson* are consistent in holding that a law of general applicability that does

15   not directly affect a national bank's lending is not preempted by HOLA. In this case, the

16   DeLeons provide only a conclusory statement that they were deceived when Wells Fargo

17   foreclosed on the property while their loan modification still was pending. Compl. ¶ 33. While

18   they assert that there was an agreement to complete the loan modification, Compl. ¶ 33, they

19   allege only that Wells Fargo expressed "confidence that the modification would be approved

20   once all documents had been received . . . ." and "received encouragement from WELLS

21   FARGO that the loan modification would be approved." Compl. ¶¶ 14-15. Without more, such

22   statements do not create a duty or contract to modify a loan. *Huerta v. Ocwen Loan Servicing,*

23   *Inc.*, No. C 09-05822 (HRL), 2010 U.S. Dist. LEXIS 17970, *11-12 (N.D. Cal. Mar. 1, 2010).

24   However, because the DeLeons may be able to allege additional facts more analogous to those

25   alleged in *Gibson*, leave to amend will be granted.

26   **3. Violation of California Civil Code § 2923.5 (Claim 5)**

27   The DeLeons allege that Wells Fargo violated California Civil Code § 2923.5 by failing

28                                          11

to comply with statutory notice requirements. Compl. ¶ 38. As discussed above, § 2923.5 affects the servicing of mortgages[4], that implicates HOLA's express preemption of state laws regulating the "processing" and "servicing" mortgages. Several other district courts within the Ninth Circuit have concluded that such claims are preempted. *See Parcray v. Shea Mortg., Inc.*, No. CV-F-09-1942 OWW/GSA, 2010 WL 1659369, at *9 (E.D. Cal. Apr. 23, 2010) (concluding that HOLA preempts Section 2923.5 because it "concerns the processing and servicing of [the plaintiff]'s mortgage...."); *Odinma v. Aurora Loan Servs.,* No. C-09-4674 EDL, 2010 WL 1199886, at *8 (N.D. Cal. Mar. 23, 2010) (concluding that a "Section 2923.5 claim concerns the processing and servicing of Plaintiffs' mortgage and is preempted by HOLA"; *Murillo v. Aurora Loan Servs., LLC*, No. C 09-00504 JW, 2009 WL 2160579, at *4 (N.D. Cal. July 17, 2009) (same). *See also Steffan*, 2009 U.S. Dist. LEXIS 113480, at *9 ("Plaintiffs' claims of misconduct surrounding the foreclosure proceedings clearly fall under the preemption provisions for 'processing, origination, sale or purchase of … mortgages'"). The reasoning of these cases is persuasive.

**4. Predatory Lending (Claim 6)**

The DeLeons allege that Wells Fargo engaged in predatory lending in violation of California Financial Code §§ 4973 and 4979.6 when it encouraged them to refinance their loan in September 2007. Compl. ¶ 45. Wells Fargo argues that to the extent that this claim is not preempted by HOLA, it is time-barred. The Court agrees that the claim is time-barred. California Code of Civil Procedure § 340 provides a one-year limitation period for statutes such as §§ 4973 and 4979.6 that do not prescribe a different period. The instant action was filed on February 10, 2010, more than two years after the refinanced loan was consummated. Compl. ¶ 11.

**5. Cancellation of Trustee's Deed and Quiet Title (Claim 2 and 7)**

The DeLeons seek to cancel the deed resulting from the trustee's sale or in the alternative to quiet title in their favor notwithstanding the deed recorded by Wells Fargo on January 20,

---

[4] *See, e.g.* Cal. Civ. Code § 2923.5(a)(1) (2010) ("A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default...until 30 days after initial contact is made...or 30 days after satisfying the due diligence requirements....").

12

1    2010. These claims are premised on DeLeons' claims of wrongful foreclosure and defective

2    notice, which are preempted by HOLA.

3    **6. Preliminary and Permanent Injunction (Claim 4)**

4         The DeLeons seek a preliminary and permanent injunction enjoining Wells Fargo from

5    evicting them from the Property. A preliminary injunction is "an extraordinary remedy that may

6    only be awarded upon a clear showing that the Plaintiffs is entitled to such relief." *Winter v.*

7    *Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 376 (2008). "The proper legal standard for

8    preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on

9    the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3)

10   that the balance of equities tips in his favor, and (4) that an injunction is in the public

11   interest.'"*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 129 S.

12   Ct. at 374)). The issuance of a preliminary injunction is committed to the discretion of the district

13   court. *Indep. Living Ctr.* v. *Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009).

14        Here, the DeLeons have failed to show that they are likely to succeed on the merits with

15   respect to their state law claims. Their claims are either preempted by HOLA, time-barred, or

16   insufficiently pled. Accordingly, the request for a preliminary injunction will be denied. The

17   claim for permanent injunction relief will be dismissed without prejudice pending amendment of

18   the UCL claim.

19                                    **IV. Motion to Strike**

20        Pursuant to Federal Rules of Civil Procedure 12(f), the Court may strike "from any

21   pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

22   matter." Motions to strike generally will not be granted unless it is clear that the matter to be

23   stricken could not have any possible bearing on the subject matter of the litigation. *See LeDuc v.*

24   *Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). Allegations "supplying

25   background or historical material or other matter of an evidentiary nature will not be stricken

26   unless unduly prejudicial to defendant." *Id*. Moreover, allegations which contribute to a full

27   understanding of the complaint as a whole need not be stricken. *See id.*

28                                           13

Defendant moves to strike several portions of the complaint, Def's. Mot. to Strike 2:2-25. Because the Court has granted Wells Fargo's motion to dismiss all of the DeLeons' claims, the motion to strike will be terminated as moot.

## V. ORDER

Good cause therefor appearing:

(1) The motion to remand is DENIED.

(2) The motion to dismiss is GRANTED, WITH LEAVE TO AMEND IN PART.

(3) The motion to strike is TERMINATED as moot.

Any amended pleading shall be filed and served within twenty (20) days of the date this order is filed.

IT IS SO ORDERED

DATED: 6/9/2010

_____
JEREMY FOGEL
United States District Judge

Case Number CV 10-01390 JF (HRL)
ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS
WITH LEAVE TO AMEND IN PART
(JFEX2)