1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GABRIEL JAMES DeLEON and SHAWNA L. DeLEON,<br><br>                 Plaintiffs,<br><br>    v.<br><br>WELLS FARGO BANK, N.A., Successor by Merger to Wells Fargo Bank Southwest, N.A. (formerly known as Wachovia Mortgage, FSB and World Savings Bank, FSB); NDEX WEST, L.L.C.; and DOES 1-50, inclusive,<br><br>                 Defendants. | Case No.: 10-CV-01390-LHK<br><br>ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE; DENYING AS MOOT MOTION TO STRIKE; GRANTING MOTION TO EXPUNGE LIS PENDENS; AND DENYING REQUEST FOR FEES AND COSTS |

Before the Court are Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC"), Motion to Strike portions of the SAC, and Motion to Expunge the Notice of Pendency of Action. Defendant NDEX West, LLC, joins in Wells Fargo's motion to dismiss. Although Plaintiff Gabriel DeLeon appeared at the motion hearing, Plaintiffs failed to file an opposition to any of the pending motions. Having considered the arguments of the parties and the relevant law, the Court GRANTS Defendants' motion to

1

Case No.: 10-CV-01390-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE; DENYING AS MOOT MOTION TO STRIKE; GRANTING MOTION TO EXPUNGE LIS PENDENS; AND DENYING REQUEST FOR FEES AND COSTS

1 │ dismiss with prejudice, DENIES as moot Wells Fargo's motion to strike, and GRANTS Wells

2 │ Fargo's motion to expunge the *lis pendens*.

### I. Background

In June 2004, Plaintiffs Gabriel and Shawna DeLeon purchased a home in San Benito County for $804,000, and entered into a mortgage with World Savings Bank, FSB, in the amount of $562,800.[1]  SAC ¶ 7.  In 2007, World Savings Bank offered Plaintiffs the option of refinancing their loan because their home had appreciated in value.  SAC ¶ 8.  Plaintiffs chose to refinance the loan and entered into a 4-year adjustable rate mortgage.  *Id.*  Beginning in August 2008, Plaintiffs became unable to afford the payments on the refinanced loan, and in 2009, a notice of default was recorded and sent to Plaintiffs.  SAC ¶¶ 9-10.  In response, Plaintiffs contacted Wells Fargo by phone to inquire about a loan modification.  SAC ¶10.  Wells Fargo agreed to discuss a potential loan modification, and Wells Fargo Representative Brett Davis was assigned to handle Plaintiffs' loan modification process.  SAC ¶¶ 11-12.  Between October 2009 and January 2010, Plaintiffs engaged in phone discussions with Davis in attempts to finalize a loan modification.  SAC ¶¶ 11-14.  Plaintiffs allege that Wells Fargo expressed confidence that a loan modification would be approved once all documents were received from the Plaintiffs, and that they faxed Davis all the required documentation on October 3, 2009.  SAC ¶¶ 11, 13.  When Plaintiffs asked why the loan modification process was taking so long, Davis told them that it was not uncommon for the process to take months.  SAC ¶ 14.  Plaintiffs allege that Mr. Davis assured them that no foreclosure sale would occur while negotiations for the modification were pending.  *Id.*

Nonetheless, on January 16, 2010, a realtor informed Plaintiffs that their home had been sold and that their property was now owned by the bank.  SAC ¶ 15. Plaintiffs allege that they were stunned because they had not received a mailed notice of trustee's sale and no such notice was

---

[1] In 2007, World Savings Bank, a federal savings bank regulated by the Office of Thrift Supervision, was renamed Wachovia Mortgage, FSB, also a federal savings bank.  Def. Wells Fargo's Request for Judicial Notice in Supp. of Motions to Dismiss and Strike the SAC ("RJN"), Exs. A-B.  On November 1, 2009, Wachovia Mortgage was converted to a national bank and merged into Wells Fargo Bank, N.A.  RJN Ex. D.  Plaintiffs' SAC refers throughout to conduct of "Wells Fargo" regardless of the date of the alleged conduct.  The Court also refers to Wells Fargo throughout, except when it is necessary to determine which entity actually took the alleged actions.

2

United States District Court
For the Northern District of California

1  posted on their property.  SAC ¶ 15.  They immediately contacted Davis, who "was in disbelief"

2  and initially told them that the realtor must be mistaken.  SAC ¶ 16.  After speaking to the realtor,

3  however, Davis confirmed that the property had indeed been sold and told Plaintiffs that there must

4  have been some mistake.  SAC ¶ 17.  He told them not to worry, that the mix-up would be resolved

5  and the loan modification reinstated.  *Id.*

6      On January 20, 2010, Plaintiffs received a notice from Wells Fargo requiring them to

7  vacate the property within three days.  SAC ¶ 18.  Although Plaintiffs attempted to contact Mr.

8  Davis again to find out what was happening, they allege that he began distancing himself from

9  their situation and that Wells Fargo took no action to correct the problem.  SAC ¶ 19-20.

10  Sometime after the trustee's sale, Plaintiffs learned that Defendant NDEX was subcontracted by

11  Wells Fargo to handle the foreclosure and sale of Plaintiff's property.  SAC ¶ 22.  Plaintiffs allege

12  that at no time prior to the sale were they contacted by either Wells Fargo or NDEX to explore

13  options to avoid foreclosure.  SAC ¶ 21.  Plaintiffs allege further that they were never advised that

14  they had a right to request a meeting and were never provided a toll free number to find a HUD-

15  Certified Housing Counseling Agency.  *Id.*

16      On February 10, 2010, Plaintiffs filed suit in San Benito County Superior Court, asserting

17  seven claims for relief.  Defendant removed the action to federal court on the basis of diversity

18  jurisdiction and immediately filed a motion to dismiss Plaintiffs' Complaint.  In an order dated

19  June 9, 2010, Judge Jeremy Fogel (who was then assigned to this case) granted Defendant's motion

20  to dismiss with leave to amend in part.  Order Denying Mot. to Remand and Granting Mot. to

21  Dismiss with Leave to Amend in Part ("First Order Granting Mot. to Dismiss"), ECF No. 18.  On

22  June 29, 2010, Plaintiffs filed a First Amended Complaint ("FAC"), which included four new

23  claims for relief.  The Court granted Wells Fargo's motion to dismiss the FAC on October 22,

24  2010, and granted Plaintiff leave to amend in part.  Order Granting Mot. to Dismiss with Leave to

25  Amend in Part ("Second Order Granting Mot. to Dismiss"), ECF No. 44.  Plaintiff responded by

26  filing a Second Amended Complaint ("SAC") that includes five claims: (1) violations of the

27  California Unfair Competition Law, Cal. Bus. & Profs. Code § 17200 *et seq.*; (2) intentional

28

3

United States District Court
For the Northern District of California

1    misrepresentation; (3) negligent misrepresentation; (4) negligence; (5) breach of contract. Wells

2    Fargo now moves to dismiss the entire SAC, to strike portions of the SAC, and to expunge the *lis*

3    *pendens* on the subject property. Defendant NDEX West, LLC, which is named only in Plaintiff's

4    negligence cause of action, joins in Wells Fargo's motion to dismiss.

5    **II. Request for Judicial Notice**

6         As a general rule, a district court may not consider any material beyond the pleadings in

7    ruling on a 12(b)(6) motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles*, 250

8    F.3d 668, 688 (9th Cir. 2001). However, a court may take judicial notice of matters of public

9    record outside the pleadings. *Id.* at 689. In this case, Defendant requests judicial notice of records

10   of the Office of Thrift Supervision and the Comptroller of the Currency, including copies of 1) the

11   certificate of corporate existence of World Savings Bank, FSB; 2) a letter from OTS reflecting the

12   name change from World Savings Bank, FSB, to Wachovia Mortgage, FSB; 3) Wachovia

13   Mortgage's charter; and 4) a letter from the Comptroller of the Currency reflecting Wachovia

14   Mortgage's merger into Wells Fargo. Def. Wells Fargo's Req. for Judicial Notice in Supp. of

15   Mots. to Dismiss and Strike the SAC ("RJN") 2, Ex. A-D. Defendant also requests judicial notice

16   of four documents recorded with the San Benito County Recorder's Office in connection with

17   Plaintiffs' mortgage. RNJ 2-3, Ex. E-H.

18        A district court may take notice of facts not subject to reasonable dispute that are "capable

19   of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

20   questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th

21   Cir.1993). The Court concludes that the government records and public documents submitted by

22   Defendant are not subject to reasonable dispute and are proper subjects of judicial notice. *See*

23   *Lopez v. Wachovia Mortg.*, No. C 10-01645, 2010 WL 2836823, at *2 (N.D.Cal. 2010) (taking

24   judicial notice of nearly identical documents). Accordingly, the Court GRANTS Defendants'

25   request for judicial notice.

26

27

28

                                                    4

### III. Motion to Dismiss

#### A.  Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008).  While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.

Additionally, claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. Pro. 9(b).  To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  The rule favoring liberality in granting leave to amend is particularly important for *pro se* litigants.  *Id.* at 1131.

5

Case No.: 10-CV-01390-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE; DENYING AS MOOT MOTION TO STRIKE; GRANTING MOTION TO EXPUNGE LIS PENDENS; AND DENYING REQUEST FOR FEES AND COSTS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**B.   Analysis**

Wells Fargo asserts a number of grounds for dismissal for each of Plaintiff's causes of action.  Because Wells Fargo argues that each of Plaintiff's claims is preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq*, the Court will begin with an overview of HOLA preemption, and then turn to analysis of Plaintiff's individual claims.

**1.       HOLA Preemption**

As federal savings banks, Plaintiff's lender, World Savings Bank, FSB, and its successor Wachovia Mortgage were subject to HOLA and regulated by the Office of Thrift Supervision ("OTS").  12 U.S.C. § 1464; *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008).[2]  The Ninth Circuit has described HOLA and OTS regulations as a "radical and comprehensive response to the inadequacies of the existing state system."  *Silvas*, 514 F.3d at 1004 (quoting *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), *aff'd*, 445 U.S. 921 (1980)).  In its role as principal regulator of federal savings associations, OTS promulgated an express field preemption regulation codified at 12 C.F.R. § 560.2.  The regulation states that "OTS hereby occupies the entire field of lending regulation for federal savings associations."  12 C.F.R. § 560.2(a).  The effect of this regulation is to leave virtually "no room for state regulatory control."  *Silvas*, 514 F.3d at 1004 (quoting *Conference of Fed. Sav.*, 604 F.2d at 1257, 1260).

OTS regulations provide guidance on determining whether a state law is preempted.  Section 560.2(b) of the OTS regulation provides a nonexclusive list of the types of state laws

---

[2] Federal savings associations, including federal savings banks, are subject to HOLA and regulated by the Office of Thrift Supervision ("OTS").  12 U.S.C. § 1464; *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008).  National banks are subject to regulation by the Office of the Comptroller of the Currency ("OCC") under the National Banking Act ("NBA").  *See Bank of America v. City and County of San Francisco*, 309 F.3d 551, 561-62 (9th Cir. 2002). The OTS and the OCC have promulgated preemption provisions that are very similar in structure and substance. *Compare* 12 C.F.R. § 560.2, *with* 12 C.F.R. § 34.4.  To the extent that the conduct alleged by Plaintiffs took place after Wachovia Mortgage, FSB, merged into Wells Fargo and became a national bank, preemption under the National Banking Act would apply in a similar manner to preemption under HOLA.  *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555-57 (9th Cir. 2010) (discussing preemption by OCC regulations of state laws related to real estate lending).

6

preempted by the regulation.  This list includes state laws purporting to impose requirements

regarding:

> (4) The terms of credit, including . . . the circumstances under which a loan may
> be called due and payable upon the passage of time or a specified event external
> to the loan;
> ...
> (9) Disclosure and advertising, including laws requiring specific statements,
> information, or other content to be included in credit application forms, credit
> solicitations, billing statements, credit contracts, or other credit-related documents
> and laws requiring creditors to supply copies of credit reports to borrowers or
> applicants;
> ...
> (10) Processing, origination, servicing, sale or purchase of, or investment or
> participation in, mortgages;

12 C.F.R. § 560.2(b).  OTS further instructs that the first step in a preemption analysis is to

determine whether the state law at issue is of a type listed in paragraph (b).  *Silvas*, 514 F.3d at

1005.  In doing so, the court does "not look merely to the abstract nature of the cause of action

allegedly preempted but rather to the functional effect upon lending operations of maintaining the

cause of action."  *Naulty v. GreenPoint Mortg. Funding, Inc.*, Nos. C 09-1542, C 09-1545, 2009

WL 2870620, at *4 (N.D. Cal. Sept. 3, 2009).  If an application of the state law to the activities of

the federal savings bank would "impose requirements" regarding the lending activities listed in

paragraph (b), then the analysis ends there; the law is preempted.  *Silvas*, 514 F.3d at 1005.

This does not mean, however, that HOLA completely preempts all state laws that might

have some effect on federal savings banks.  Section 560.2(c) includes a savings clause that lists

specific types of state laws, including contract and tort, which are not subject to preemption "to the

extent that they only incidentally affect the lending operations of Federal savings associations."  12

C.F.R. § 560.2(c).  Under the analysis put forth by the OTS and adopted by the Ninth Circuit, the

savings clause in paragraph (c) comes into play only if the state law is not expressly preempted by

paragraph (b).  *Silvas*, 514 F.3d at 1005-06.  Pursuant to this analysis, courts have found that

certain claims of express deception and breach of contract may survive preemption under HOLA

and a similar regulation under the National Bank Act.  *See Martinez v. Wells Fargo Home Mortg.,*

*Inc.*, 598 F.3d 549, 555-57 (9th Cir. 2010) ("various district courts have held that the [National

Case No.: 10-CV-01390-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE; DENYING AS MOOT MOTION TO STRIKE;
GRANTING MOTION TO EXPUNGE LIS PENDENS; AND DENYING REQUEST FOR FEES AND COSTS

**United States District Court**
For the Northern District of California

1  Bank] Act does not preempt a claim of express deception asserted under state law"); *Gibson v.*

2  *World Savings & Loan Assn.*, 103 Cal. App. 4th 1291, 1303-04, 128 Cal. Rptr. 2d 19 (Cal. Ct. App.

3  2002) (concluding that HOLA does not preempt "duties to comply with contracts and the laws

4  governing them and to refrain from misrepresentation").

5                              **2.      UCL Claim**

6          Plaintiffs' first claim alleges that Wells Fargo's conduct violated the California Unfair

7  Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200 *et seq.*  The UCL creates a cause of

8  action for business practices that are unlawful, unfair, or fraudulent.  Cal. Bus. & Profs. Code

9  § 17200.  Thus, a business practice may violate the UCL if the practice constitutes a violation of

10  another law, *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th

11  163, 180, 83 Cal. Rptr. 2d 548 (1999); if it violates established public policy or is "immoral,

12  unethical, oppressive or unscrupulous," *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473,

13  49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006); or if the practice is likely to deceive the public, *Freeman*

14  *v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).

15          Plaintiffs allege three possible grounds for their UCL claim: (1) Wells Fargo's violation of

16  an oral agreement finalizing a loan modification; (2) Wells Fargo's misrepresentation that no

17  foreclosure sale would occur while the loan modification was pending; and (3) Wells Fargo's

18  failure to give appropriate notice of the trustee's sale.  The first ground, based on breach of

19  contract, cannot serve as a basis for Plaintiffs' UCL claim because, as discussed in more detail

20  below (*see* Section III.B.6), Plaintiffs have not plausibly alleged the existence of a contract.  The

21  third ground, based on failure to provide required notices, has already been dismissed by this Court

22  on grounds of HOLA preemption.  *See* Second Order Granting Mot. to Dismiss 10.  Numerous

23  district courts have held that state laws requiring banks to provide specific notices or disclosures

24  during the foreclosure process are preempted by HOLA.  *See, e.g.*, *Giordano v. Wachovia Mortg.*,

25  *FSB*, No. 5:10-cv-04661-JF, 2010 WL 5148428, at *3-4 (N.D. Cal. Dec. 14, 2010) (finding that

26  HOLA preempts state laws setting forth procedures for filing a notice of default and conducting a

27  foreclosure sale); *Odinma v. Aurora Loan Services*, No. C-09-4674 EDL, 2010 WL 1199886, at *8

28

Case No.: 10-CV-01390-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE; DENYING AS MOOT MOTION TO STRIKE;
GRANTING MOTION TO EXPUNGE LIS PENDENS; AND DENYING REQUEST FOR FEES AND COSTS

**United States District Court**
For the Northern District of California

1   (N.D. Cal. Mar. 23, 2010) (holding that state law requiring notice of default is preempted).  This

2   Court agrees that a UCL claim premised on failure to provide adequate notice of a trustee's sale

3   would impose requirements directly relating to the processing, servicing, or participation in

4   mortgages and is therefore preempted pursuant to 12 C.F.R. 560.2(b)(10).

5          Defendants argue that Plaintiffs' second ground, based on false representations, is also

6   subject to HOLA preemption.  The Ninth Circuit has recognized that even claims premised upon

7   state laws of general applicability, such as fraud or deceit, may be preempted if the state law, as

8   applied, is a type of law contemplated by 12 C.F.R. § 560.2(b).  *Silvas*, 514 F.3d at 1006.

9   Generally, however, when courts find claims of fraud or misrepresentation to be preempted, the

10  allegations are related to inadequate disclosures of fees, interest rates, or other loan terms,

11  *Taguinod v. World Sav. Bank, FSB*, No. CV 10-7864-SVW, 2010 WL 5185845, at *4 (C.D. Cal.

12  Dec. 2, 2010), or inadequate notice of various rights and procedures during the foreclosure process.

13  *See, e.g.*, *Giordano*, 2010 WL 5148428, at *3-4; *Odinma v. Aurora Loan Services*, 2010 WL

14  1199886, at *8.  Because such claims would effectively impose requirements that banks include

15  specific information in loan documents or provide specific notices during foreclosure, they are

16  preempted by 12 C.F.R. § 560.2(b)(9) ("laws requiring specific statements, information, or other

17  content to be included in . . . credit-related documents"), and § 560.2(b)(10) (processing and

18  servicing of mortgages).

19         In contrast, when a plaintiff's claim relies on the general duty not to misrepresent material

20  facts, and when application of the law does not regulate lending activity, California district courts

21  have found that the claims are not preempted.  *See Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399,

22  417 (N.D. Cal. 2009) (distinguishing between allegations of inadequate disclosures of loan terms

23  and affirmative, material misrepresentations); *Taguinod*, 2010 WL 5185845, at *4 (deliberate

24  change to loan document after signing not preempted); *Ibarra v. Loan City*, No. 09-CV-02228-

25  IEG, 2010 WL 415284, at *5 (S.D. Cal. Jan. 27, 2010) (misrepresentation of material facts not

26  preempted).  These decisions are in accordance with the Ninth Circuit's opinion in *Martinez v.*

27  *Wells Fargo Home Mortgage, Inc.*, which reasoned that a similar preemption regulation under the

28

9

1   National Bank Act would not bar claims based on the general duty to refrain from fraud and

2   express deception.  598 F.3d 549, 555 (9th Cir. 2010).  This approach also conforms to the OTS's

3   own determination that the California UCL is preempted to the extent that it is used to set

4   substantive standards for lending operations and practices, or to require a particular form of

5   disclosures, but that "its general application to federal savings associations in a manner that only

6   incidentally affects lending" is not subject to preemption.  California Unfair Competition Act,

7   Office of Thrift Supervision Legal Opinion P-99-3, at 13-15, 18 (Mar. 10, 1999), *available at*

8   http://www.ots.treas.gov/_files/56903.pdf.

9         Here, Plaintiffs allege that Wells Fargo falsely represented that it would complete a loan

10   modification agreement and that no foreclosure sale would occur while the loan modification was

11   pending.  SAC ¶ 25-27.  Plaintiffs do not seek to impose a substantive requirement that a federal

12   savings bank must always complete a loan modification agreement once the modification process

13   has started or that a federal savings bank can never execute a sale while a loan modification is

14   pending.  Rather, Plaintiffs seek only to require Wells Fargo to refrain from making untrue

15   statements about material facts when doing business with mortgagors or any other persons.

16   Plaintiffs thus invoke the general duty not to engage in fraud or express deception in a manner that

17   only incidentally affects lending activities.  For this reason, HOLA does not preempt Plaintiff's

18   UCL claim based on misrepresentation.

19         To bring a claim under the UCL, however, Plaintiffs must have suffered an injury in fact

20   and lost money or property as a result of Wells Fargo's alleged unfair or fraudulent practices.  Cal.

21   Bus. & Profs. Code § 17204; *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788, 233 P.3d 1066 (2010).

22   Here, Plaintiffs allege that Wells Fargo's misrepresentations "lulled" Plaintiffs into concentrating

23   their efforts on completion of the loan modification process.  SAC ¶ 27.  Plaintiffs claim that if

24   they had known that Wells Fargo never intended to complete the loan modification process, they

25   would have instead concentrated their efforts on reinstating the loan prior to the trustee's sale under

26   California Civil Code § 2924c.  *Id.*  As Defendants point out, however, at the time of default in

27   June 2009, Plaintiffs were $43,927.22 in arrears.  RJN Ex. F.  In order to cure the default, Plaintiffs

28

Case No.: 10-CV-01390-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE; DENYING AS MOOT MOTION TO STRIKE;
GRANTING MOTION TO EXPUNGE LIS PENDENS; AND DENYING REQUEST FOR FEES AND COSTS

1    would have had to pay that amount in full, plus any payment obligations that accrued after the

2    default was recorded. *See* Cal. Civ. Code § 2924c(a)(1) (providing that mortgagor can cure default

3    by paying the entire amount in default, plus recurring obligations that accrue after the notice of

4    default is recorded).  Plaintiffs acknowledge that since August 2008, they had been unable to make

5    their monthly payments of $2,600, SAC ¶ 9, and at the hearing they conceded that they made no

6    payments on the mortgage between August 2008 and October 15, 2010, when they vacated the

7    premises.  Without some factual basis suggesting that Plaintiffs could have cured the default in the

8    fall of 2009, the Court cannot reasonably infer that Wells Fargo's alleged misrepresentations

9    resulted in the loss of Plaintiffs' home.  Rather, the facts alleged suggest that Plaintiffs lost their

10   home because they became unable to keep up with monthly payments and lacked the financial

11   resources to cure the default.  Although the Court understands Plaintiffs' frustrations with Wells

12   Fargo's seemingly contradictory statements and actions, it does not appear that this conduct

13   resulted in a loss of money or property.  For this reason, Plaintiffs lack standing to sue under the

14   UCL, and the claim must be dismissed.

15                    **3.        Intentional Misrepresentation**

16         Plaintiff's second cause of action alleges fraud based on intentional misrepresentations

17   made by Wells Fargo.  This claim is grounded in allegations that Wells Fargo represented (1) that

18   the loan modification would be completed, and (2) that no foreclosure sale would take place while

19   the loan modification was pending.  SAC ¶ 22.  Like Plaintiff's misrepresentation-based UCL

20   claim, because this claim is based on allegations of material misrepresentations and does not

21   attempt to impose substantive requirements regarding loan terms, disclosures, or servicing or

22   processing procedures, it is not preempted by HOLA. Nonetheless, the Court agrees with

23   Defendants that Plaintiffs' claim for intentional misrepresentation must be dismissed for failure to

24   state a claim.

25         To determine if the elements of fraud have been pleaded to state a cause of action the Court

26   looks to state law.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).  In California,

27   the elements of fraud are: (1) misrepresentation; (2) knowledge of falsity (scienter); (3) intent to

28

Case No.: 10-CV-01390-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE; DENYING AS MOOT MOTION TO STRIKE;
GRANTING MOTION TO EXPUNGE LIS PENDENS; AND DENYING REQUEST FOR FEES AND COSTS

United States District Court
For the Northern District of California

defraud (i.e., intent to induce reliance); (4) justifiable reliance; and (5) resulting damage.  *Id.*  With regard to Plaintiff's claim that Wells Fargo "expressed its confidence that the modification would be approved," SAC ¶ 11, the Court agrees with Defendants that an expression of confidence is a statement of opinion that does not support a claim of fraud.  *See Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 308, 103 Cal. Rptr. 2d 159 (Cal. Ct. App. 2000) ("The law is quite clear that expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action.").  In contrast, however, the statements by Mr. Davis assuring Plaintiffs that no foreclosure sale would occur while the loan modification was pending appear to be statements of fact regarding Wells Fargo's foreclosure policies, and thus may form the basis for Plaintiffs' intentional representation claim.

The trouble for Plaintiffs, however, is that they have not adequately alleged knowledge of falsity, intent to defraud, or resulting damage.  While the heightened pleading requirements of Rule 9(b) do not apply to allegations of knowledge or intent, Fed. R. Civ. Pro. 9(b), Plaintiffs must still plead facts establishing scienter with the plausibility required under Rule 8(a).  *Iqbal*, 129 S.Ct. at 1954.  Here, Plaintiffs' second cause of action includes conclusory allegations that Wells Fargo knew that its representations were false and made them with the intent to deceive and defraud Plaintiffs. SAC ¶ 23. Elsewhere in the complaint, however, Plaintiffs suggest that Wells Fargo was merely negligent in failing to inform NDEX, the trustee, that there was a loan modification pending and that therefore no sale should take place.  SAC ¶ 22.  Plaintiffs also state that Davis, who made the representations that no sale would occur, "was in disbelief" when he learned of the sale and told them that it must have been a mistake.  SAC ¶ 16-17.  This suggests that Davis was as shocked as Plaintiffs by the sale of their property, not that he knowingly lied in order to defraud them.  It is not clear, based on Plaintiffs' pleadings, whether Plaintiffs believe that Davis merely feigned disbelief and in fact intentionally defrauded them, or whether Plaintiffs believe that Davis himself was intentionally misinformed by Wells Fargo.  At the hearing, however, Plaintiff Gabriel DeLeon stated that he believed this was a case of one department not talking to another, or of Wells Fargo's

Case No.: 10-CV-01390-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE; DENYING AS MOOT MOTION TO STRIKE;
GRANTING MOTION TO EXPUNGE LIS PENDENS; AND DENYING REQUEST FOR FEES AND COSTS

United States District Court
For the Northern District of California

1   loan department failing to tell NDEX that Plaintiffs had a pending loan modification.  This theory

2   does not support allegations of knowing, intentional fraud.

3        Even if Plaintiffs could establish knowledge of falsity and intent to defraud, they still face

4   the difficulty of establishing resulting damage.  As with Plaintiffs' UCL claim, they have not

5   shown, with the required plausibility, that the alleged misrepresentations by Wells Fargo caused

6   them to lose their home or resulted in any other damages.  Plaintiffs allege that if they had known

7   the true facts, they would have taken action to enjoin the trustee's sale or reinstate the loan.  SAC

8   ¶ 24.  As discussed above, however, in order to cure the default and reinstate their loan, Plaintiffs

9   would have been required to pay at least the $43,927, something they have not alleged they could

10   have done.  In addition, Plaintiffs do not explain how they would have attempted to enjoin the

11   trustee's sale or cite any statutory provision that would have allowed them to do so.  Thus, the

12   Court cannot reasonably infer that Plaintiffs lost their home or suffered other damage as a result of

13   the alleged misrepresentations.  Because Plaintiffs have not adequately alleged knowledge of

14   falsity, intent to defraud, or resulting damages, they have failed to state a claim for intentional

15   misrepresentation, and the claim must be dismissed.

16        **4.**       **Negligent Misrepresentation**

17        Plaintiffs also bring a claim for negligent misrepresentation against Wells Fargo.  Under

18   California law, the elements of negligent misrepresentation are: "(1) the misrepresentation of a past

19   or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to

20   induce another's reliance on the fact misrepresented, (4) justifiable reliance on the

21   misrepresentation, and (5) resulting damage." *National Union Fire Ins. Co. of Pittsburgh, PA v.*

22   *Cambridge Integrated Services*, 171 Cal. App. 4th 35, 50, 89 Cal. Rptr. 3d 473 (Cal. Ct. App.

23   2009) (quotation marks and citation omitted).  Based on the facts alleged, it is fairly plausible that

24   Mr. Davis lacked reasonable grounds for believing that Plaintiffs' home could not be sold while the

25   loan modification was pending.  After all, the home was, in fact, sold, and Mr. Davis does not

26   appear to have explained to Plaintiffs the basis for his representations.  Nonetheless, to prevail on a

27   claim for negligent misrepresentation, Plaintiffs must also show intent to induce reliance – that is,

28

Case No.: 10-CV-01390-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE; DENYING AS MOOT MOTION TO STRIKE;
GRANTING MOTION TO EXPUNGE LIS PENDENS; AND DENYING REQUEST FOR FEES AND COSTS

1    intent to "lull" Plaintiffs into foregoing reinstatement of the loan – and resulting damage.  As

2    discussed above, Plaintiffs have not alleged facts sufficient to plausibly establish these elements.

3    Thus, Plaintiff's negligent misrepresentation claim must be dismissed.

### 5.    Negligence

5         Plaintiffs' fourth cause of action alleges negligence by both Wells Fargo and NDEX.

6    Plaintiffs claim that Wells Fargo owed Plaintiff a duty to complete the loan modification process

7    and to postpone the foreclosure sale pending completion of such process.  SAC ¶ 32.  They also

8    claim that both Wells Fargo and NDEX owed Plaintiffs a duty to serve them with a proper notice

9    of sale.  *Id.*  These allegations are identical to the allegations of negligence in Plaintiffs' First

10   Amended Complaint.  In its previous order, the Court dismissed this claim on grounds that a

11   financial institution owes no duty of care to a borrower unless it "actively participates in the

12   financed enterprise beyond the domain of the usual money lender." *Nymark v. Heart Fed. Savings*

13   *& Loan Assn.*, 231 Cal. App. 3d 1089, 1096, 283 Cal. Rptr. 53 (Cal. Ct. App. 1991).  Because

14   Plaintiffs still have not alleged any participation beyond that of the usual money lender, they

15   cannot state a negligence claim against Wells Fargo.  In addition, although a trustee under a deed

16   of trust, such as NDEX, may be subject to statutory requirements, trustees are not subject to a

17   common law duty of care.  *I. E. Associates v. Safeco Title Ins. Co.*, 39 Cal. 3d 281, 287-88, 702

18   P.2d 596 (1985); *Heritage Oaks Partners v. First American Title Ins. Co.*, 155 Cal. App. 4th 339,

19   345, 66 Cal. Rptr. 3d 510 (Cal. Ct. App. 2007).  In this case, moreover, because Plaintiffs'

20   negligence claim would impose substantive duties to provide specific notices and to enter into loan

21   modification agreements, the claim is preempted by HOLA.  *See* 12 C.F.R. §§ 560.2(b)(10);

22   *Odinma*, 2010 WL 1199886, at *8 (holding that state law requiring notice of default is preempted).

23   Accordingly, Plaintiffs' negligence claim must be dismissed.

### 6.    Breach of Contract

25        Plaintiffs' fifth claim alleges that Wells Fargo breached an oral agreement with Plaintiffs in

26   which it agreed to process a loan modification and postpone sale of the property until completion

27   of such process.  To state a claim for breach of contract under California law, Plaintiffs must plead

28

14

**United States District Court**
For the Northern District of California

1   facts establishing the following elements: "(1) existence of the contract; (2) plaintiff's performance

2   or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the

3   breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239, 70 Cal. Rptr. 3d 667

4   (2008).   The Court previously dismissed Plaintiffs' breach of contract claim because Plaintiffs

5   failed to allege facts sufficient to establish the existence of a contract.   In their Second Amended

6   Complaint, Plaintiffs allege that Wells Fargo expressed confidence that the modification would be

7   approved once all documentation had been received; that Plaintiffs faxed the required financial

8   documentation; and that Plaintiffs' were assured that no foreclosure sale would take place while the

9   loan modification process was still pending.  SAC ¶¶ 11-14.  Plaintiffs do not allege, however, that

10  they actually entered into a loan modification agreement or signed any mortgage, deed, or other

11  contract.  As the Court has previously indicated, the allegations that Wells Fargo expressed

12  confidence and made assurances to Plaintiffs are not sufficient to allow the Court to draw a

13  reasonable inference that Wells Fargo made any definite promise, supported by consideration, that

14  would establish a binding and enforceable contract.  *See, e.g.*, *Powell v. Residential Mortg. Capital*,

15  No. C 09-04928, 2010 WL 2133011, at *7 (N.D. Cal. May 24, 2010) (allegations that defendant

16  promised to provide an affordable loan and obtain certain interest rates is not sufficient to show the

17  existence of a contract); *Hardy v. Indymac Federal Bank*, 263 F.R.D. 586, 592 (E.D. Cal. 2009)

18  (same); *see also Beverage Distributors, Inc. v. Olympia Brewing Co.*, 440 F.2d 21, 29-30 (9th Cir.

19  1971) (explaining that "a hopeful encouragement" or "mere expression of intention or general

20  willingness to do something on the happening of a particular event" does not constitute a contract).

21  Accordingly, Plaintiffs have not cured the deficiencies identified in their previous complaints, and

22  their breach of contract claim must be dismissed.

23              **7.       Dismissal with Prejudice**

24          Plaintiffs' Second Amended Complaint is the third complaint they have filed in this action.

25  Although the Court referred Plaintiffs to the Federal Legal Assistance Self-Help center for

26  assistance, this is the second motion to dismiss that Plaintiffs have failed to oppose.  While it

27  appears that Plaintiffs may have some reason to be frustrated or angered by the foreclosure process

28

                                                      15

1    they experienced, none of their three complaints has alleged any claim or injury that would entitle

2    them to relief.  This is the third motion to dismiss that the Court has granted.  The Court thus finds

3    that permitting Plaintiffs to file a Third Amended Complaint would be futile.  Accordingly,

4    Plaintiff's Second Amended Complaint is DISMISSED with prejudice.  Because the Court has

5    dismissed Plaintiff's entire complaint, the Court will deny as moot Wells Fargo's motion to strike.

6    **IV. Motion to Expunge *Lis Pendens***

7         Defendant Wells Fargo also moves to expunge the Notice of Pendency of Action, or *lis*

8    *pendens*, dated February 26, 2010 and recorded by Plaintiffs with the San Benito County Recorder

9    as Document No. 2010-0001805 against the property at issue in this action, located at 152 Via

10   Vaquero Sur, San Juan Bautista, California.  Federal courts look to state law in matters pertaining

11   to *lis pendens*. *See* 28 U.S.C. § 1964.  California courts have stated that the purpose of a *lis*

12   *pendens* is "to give constructive notice of the legal proceeding affecting title to a specific piece of

13   property." *Gale v. Superior Court*, 122 Cal. App. 4th 1388, 1396 19 Cal. Rptr. 3d 554 (Cal. Ct.

14   App. 2004).  Under California law, a court must expunge a *lis pendens* if it determines either that

15   the pleading on which the *lis pendens* is based does not contain a real property claim, or that the

16   claimant has not established by a preponderance of the evidence the probable validity of the real

17   property claim.  Cal. Code Civ. Pro. §§ 405.31, 405.32.  Because the Court has dismissed

18   Plaintiffs' case, in its entirety, with prejudice, Plaintiffs are left without a real property claim.

19   Additionally, although Plaintiffs apparently refused to voluntarily withdraw the *lis pendens*, they

20   declined to file an opposition to Wells Fargo's motion to expunge.  Accordingly, the Court

21   GRANTS Wells Fargo's motion to expunge the *lis pendens*.

22        Wells Fargo also seeks an award of $1,750 in attorney's fees for time spent in preparing its

23   unopposed motion to expunge the *lis pendens*.  Pursuant to California Code of Civil Procedure

24   § 405.38, the Court is required to award reasonable attorney's fees and costs incurred in making a

25   motion to expunge "unless the court finds that the other party acted with substantial justification or

26   that other circumstances make the imposition of attorney's fees and costs unjust."  In this case,

27   although it would have been preferable for Plaintiffs to voluntarily withdraw the *lis pendens*, the

28

16

United States District Court
For the Northern District of California

1   Court does not find that their claims were frivolous.  Moreover, Plaintiffs have recently lost their

2   home and are experiencing financial difficulties.  Accordingly, the Court finds that an award of

3   attorney's fees in this instance would be unjust, and Defendant's request for fees and costs is

4   DENIED.

5        **V.  Conclusion**

6        For the foregoing reasons, the Court GRANTS Defendant Wells Fargo's motion to dismiss

7   Plaintiff's entire Second Amended Complaint with prejudice, and DENIES as moot Wells Fargo's

8   motion to strike.  The Court also GRANTS Defendant Wells Fargo's motion to expunge the *lis*

9   *pendens*, but denies the request for attorney's fees and costs.  The Clerk shall close the file.

10  **IT IS SO ORDERED.**

11

12  Dated: January 28, 2011                          *Lucy H. Koh*
                                                      _____
13                                                   LUCY H. KOH
                                                      United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17